[Cite as *State v. Stone*, 2026-Ohio-1372.]

IN THE FIFTH DISTRICT COURT OF APPEALS
DELAWARE COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CAA 09 0080 |
| Plaintiff - Appellee | Opinion and Judgment Entry |
| -vs- | Appeal from the Delaware County Court of Common Pleas, Case No. 24 CRI 11 0661 |
| ADAM STONE | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: April 15, 2026 |

**BEFORE:** Robert G. Montgomery; William B. Hoffman; Craig R. Baldwin, Judges

**APPEARANCES:** Melissa A. Schiffel, Delaware County Prosecuting Attorney, Katheryn L. Munger, Assistant Prosecuting Attorney, for Plaintiff-Appellee; Michael H. Stahl, Stahl and Stephenson, for Defendant-Appellant.

*Hoffman, J.*

{¶1} Defendant-appellant Adam Stone appeals the August 27, 2025 Judgment Entry of Prison Sentence entered by the Delaware County Court of Common Pleas, which ordered his sentences on one count of telecommunications fraud and one count of attempted impersonation of a peace officer or private police officer be served consecutively. Plaintiff-appellee is the State of Ohio. We affirm the trial court.

STATEMENT OF THE FACTS AND CASE

{¶2} In December, 2016, after the Crawford County Prosecutor's Office declined to file criminal charges arising out of the death of their son, Brandon Baxter, Dan and Mindy Straker retained Appellant, a licensed attorney, to assist them with various legal issues relative thereto. The Strakers wanted, inter alia, Appellant to file a wrongful death lawsuit in an attempt to have Baxter's death be investigated as a homicide and potentially prosecuted as such.

{¶3} Appellant's efforts with the wrongful death action were unsuccessful. In 2019, Appellant informed the Strakers he was pursuing an investigation into and prosecution arising from Baxter's death with the Attorney General's Office. On November 10, 2020, Appellant texted the Strakers advising he had received an outline for a meeting with Special Prosecutor Margaret "Maggie" Tomaro in the Attorney General's Office. However, Tomaro never communicated with Appellant and the Attorney General's Office had no knowledge of any investigation or request by the Strakers to open an investigation into Baxter's death.

{¶4} The November 10, 2020 text message instilled in the Strakers a belief the injustices they perceived surrounding Baxter's death might be corrected. During this time, the Strakers continued to pay Appellant for legal services, including paying fees for a crime scene reconstructionist. Appellant also lied to the crime scene reconstructionist, indicating the Attorney General's Office was potentially examining Baxter's death. Throughout 2021, Appellant texted the Strakers, providing "updates" on the actions of the Attorney General's Office, including the convening of a special grand jury, an impending Indictment, and the issuance of an arrest warrant. Appellant also convinced the Strakers to conduct their own surveillance on their son's alleged killer as law enforcement was

short-staffed and needed to know the suspect's activities and movements. At one point, Appellant pretended he was Attorney Chris Kinsler with the Special Prosecution Section of the Attorney General's Office.

{¶5} The Strakers eventually discovered Appellant's fraud and began recording their telephone conversations with him. The Strakers pleaded with Appellant to tell them the truth, however, Appellant continued to perpetuate the fraud.

{¶6} On November 7, 2024, the Delaware County Grand Jury indicted Appellant on one count of telecommunications fraud, in violation of R.C. 2913.05(A), (C), a felony of the third degree (Count 1); one count of identity fraud, in violation of R.C. 2913.49(B)(1), (I)(2), a felony of the fifth degree (Count 2); one count of impersonation of a peace officer or private police officer, in violation of R.C. 2921.51(E), (G), a felony of the third degree (Count 3); and one count of grand theft, in violation of R.C. 2913.02(A)(3), (B)(2), a felony of the fourth degree (Count 4). Appellant appeared before the trial court for arraignment on January 10, 2025, and entered a plea of not guilty to the Indictment.

{¶7} At a pretrial hearing on July 7, 2025, the State advised the trial court the parties had reached a negotiated plea. Appellant appeared before the trial court on July 14, 2025, withdrew his former plea of not guilty and entered a plea of guilty to one count of telecommunications fraud (Count 1) and one count of attempted impersonation of a peace officer or private police officer (Amended Count 3). Following a Crim. R. 11 colloquy, the trial court accepted Appellant's plea and found him guilty. The trial court deferred sentencing pending a pre-sentence investigation. The State moved to dismiss Counts 2 and 4, which the trial court granted via Judgment Entry to Dismiss filed July 14,

2025. Appellant and the State filed sentencing memorandums on August 19, 2025, and August 21, 2025, respectively.

{¶8} Appellant appeared before the trial court for sentencing on August 26, 2025. The trial court imposed a prison term of 36 months on Count 1 and 18 months on Amended Count 3. The trial court ordered the terms be served consecutively. The trial court memorialized Appellant's sentence via Judgment Entry of Prison Sentence filed August 27, 2025.

{¶9} It is from that judgment entry Appellant prosecutes this appeal, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES AS THE AS THE [SIC] SENTENCE IMPOSED IS DISPROPORTIONATE TO THE OFFENSE AND THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDINGS IN REGARD TO R.C. 2929.14(C).

II. THE TRIAL COURT ERRED, AND OR COMMITTED PLAIN ERROR WHEN IT FAILED TO MERGE THE TWO CHARGED OFFENSES, IN VIOLATION OF MR. STOE'S [SIC] RIGHTS UNDER R.C. 2941.25, AND HIS RIGHTS AGAINST DOUBLE JEOPARDY UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.

I

**{¶10}** In his first assignment of error, Appellant contends the trial court's imposition of consecutive sentences was in contravention of R.C. 2929.14(C) and was disproportionate. We disagree.

**{¶11}** Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if the court finds: consecutive sentences are necessary to protect the public from future crime or to punish the offender; consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public; and at least one of the following applies: (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under post-release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶12}** Conformity with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means the trial court "must note that it engaged in the analysis" and it "has considered the statutory criteria and specifie[d] which of the given bases warrants its decision." (Citation omitted.) *State v. Bonnell*, 2014-Ohio-3177, ¶ 26. However, a trial court is under no obligation to state reasons to support its findings, nor must it recite certain talismanic words or phrases in order to be considered to have complied. *Id.* at ¶ 37.

**{¶13}** In general, an appellate court should give broad deference to a trial court's sentencing decision and not serve as a "second-tier sentencing court." *State v. Blanton*, 2025-Ohio-237, ¶ 30 (4th Dist.), citing *State v. Glover*, 2024-Ohio-5195, ¶ 39. R.C. 2953.08(G) reflects that deference. A trial judge usually has the benefit of presiding over the trial, hearing the witnesses testify, receiving a defendant's allocution, and often hearing directly from the victims at sentencing. *Blanton* at ¶ 30. Thus, an appellate court possesses no inherent right to review a felony sentence "[e]xcept to the extent specifically directed by statute, 'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" *Id.*, citing *Glover*, ¶ 39.

**{¶14}** R.C. 2953.08(G)(2) does not allow an appellate court to reverse or modify a sentence because a trial court arguably abused its discretion. *Glover*, 2024-Ohio-5195, at ¶ 45. An appellate court may increase, decrease, or otherwise modify consecutive sentences only if it clearly and convincingly finds the record does not support the trial court's findings or it clearly and convincingly finds the sentence is contrary to law. *Id.* at ¶ 42. "'[C]lear and convincing evidence' is a degree of proof that is greater than preponderance of the evidence but less than the beyond-a-reasonable-doubt standard used in criminal cases." (Citations omitted.) *Id.* at ¶ 46. Furthermore, "[n]owhere does the appellate-review statute direct an appellate court to consider the defendant's aggregate sentence. Rather, the appellate court must limit its review to the trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings." *Id.* at ¶ 43.

**{¶15}** The trial court found consecutive sentences were necessary to protect the public from future crime by Appellant and to punish him. The trial court further found

consecutive sentences were not disproportionate to the seriousness of Appellant's conduct and the danger he poses to the public

{¶16} At the sentencing hearing, the trial court stated, as follows, regarding the imposition of consecutive sentences:

As, as I'm, as I was thinking about this, it's hard for me. One of the things that we're to consider in sentencing is is [sic] this more or less serious than the conduct normally constituting the offense, um. I'll be, I'll be honest. I think this is more serious and perhaps the most serious because you have, um, somebody who's an attorney who represents clients, who preys on them when they're most vulnerable after their son's death, um, causing them, um, financial harm; the length of time this went on whether we want to say six years, two years, but the length of time this went on; the number of people that were impersonating, trading on what I heard numerous times were officers of the court and, um, trading on that, um, on that position that, well, only an officer of the court can get information, only an only an officer of the court can do this and so trading on that, um, law license, um. So, um, I do find that this is more serious than that normally cons [sic] – that conduct normally constituting the offense.

* * *

[Appellant] has no prior criminal history, but the things that I've read and the things that I've heard and the things that I've seen suggest to me that consecutive sentences are warranted here uh, that they are necessary to protect the public from future crime; to punish the Defendant; that

they're not disproportionate to the seriousness of his conduct and the danger posed to the public; and that these are multiple offenses that are committed as one or more course of conduct, in fact courses of conduct that went on for years that, um, were so great or unusual – and this is great or unusual – that no single prison term, uh, would reflect the seriousness of the conduct here. As I indicated, I, I do think this is, uh, more serious than that normally constituting the offense.

Transcript of August 26, 2025 Sentencing Hearing at pp. 57-59.

**{¶17}** Appellant further asserts "[t]he trial court did not consider the proportionality of the aggregate length of the sentence that it imposed at all." Brief of Appellant at p. 9. Appellant submits "that aggregate sentence, due to the lack of rational motivation as compared to the behavior of others in similar circumstances, is disproportionate to the offense." *Id.* Appellant continues "the court did not, as it might have, impose consecutive sentences that were within the sentencing range of one of the charges, but instead imposed the maximum sentence, which exceeded the most significant sentence for the most serious felony." *Id.*

**{¶18}** "Nowhere does the appellate-review statute direct an appellate court to consider the defendant's aggregate sentence." *State v. Glover*, 2024-Ohio-5195, ¶ 43. "Rather, the appellate court must limit its review to the trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings." *Id.*

**{¶19}** Upon review, we find the record does not clearly and convincingly fail to support the trial court's findings under R.C. 2929.14(C)(4) nor is it otherwise contrary to law.

**{¶20}** Appellant's first assignment of error is overruled.

II

**{¶21}** In his second assignment of error, Appellant maintains the trial court committed plain error in failing to find the two offenses merged as allied offenses of similar import. We disagree.

**{¶22}** Appellant did not raise an allied offense issue relative to the telecommunications fraud and attempted impersonation charges until the conclusion of the sentencing hearing.

**{¶23}** R.C. 2941.25, Ohio's merger statute, provides, in relevant part:

> Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his [or her] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶24}** "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors — the conduct, the animus, and the import." *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus. If any of the following are true, a defendant's convictions do not merge and he

or she may be sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25.

**{¶25}** Appellant was convicted of telecommunications fraud, in violation of R.C. 2913.05(A), which provides:

> No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

**{¶26}** Appellant was also convicted of attempted impersonation of a peace officer or private police officer, in violation of R.C. 2923.02(A) and R.C. 2921.51(E).

**{¶27}** R.C. 2923.02 governs attempts to commit criminal offenses and provides, in relevant part:

> (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

**{¶28}** R.C. 2921.51(E) provides:

(E) No person shall commit a felony while impersonating a peace officer, private police officer, federal law enforcement officer, officer, agent, or employee of the state, or investigator of the bureau of criminal identification and investigation.

**{¶29}** At the sentencing hearing, the trial court found the offenses were committed against two victims – the Strakers and Attorney Kinsler; therefore, did not merge. We disagree with the trial court's finding. Attorney Kinsler was not a victim as a result of Appellant's impersonating him in a phone call with the Strakers. There was no identifiable harm to Attorney Kinsler. Although Appellant's impersonation of Attorney Kinsler was done in furtherance of the fraud against the Strakers [therefore, of similar import] and motivated by the same animus [to defraud the Strakers], we, nonetheless, the trial court correctly determined the offenses did not merge because the charges were based upon separate and distinct conduct.

**{¶30}** Based upon the foregoing, we find the offenses of telecommunication fraud and attempted impersonation of a peace officer are not allied offenses in this case.

{¶31} For the reasons stated in our accompanying Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed.

{¶32} Costs to Appellant.


By: Hoffman, J.

Montgomery, P.J. and

Baldwin, J. concur.